O-SO-WHITE PRODUCTS CO. *v.* RICHARDS MANF'G CO.

LICENSES—CORPORATIONS—BLUE SKY LAW—ISOLATED TRANSACTION
NOT A VIOLATION.

> A contract by a corporation to exchange shares of its
> stock for a warehouse is not in violation of the blue sky
> law (Act No. 220, Pub. Acts 1923), in the absence of alle-
> gations or proof of fraud, but said transaction (an isolated
> one by the owner of the stock) comes within the excep-
> tions of subdivisions (*c*) and (*d*), section 5, of said act;
> and it is not invalid because the stock tendered was the
> exclusive property of the corporation's president, or be-
> cause he was later reimbursed by the issuance to him of
> new stock.

Appeal from superior court of Grand Rapids; Ver-
dier (Leonard D.), J.    Submitted October 8, 1926.
(Docket No. 49.)    Decided January 3, 1927.    Af-
firmed by a divided court May 3, 1927 (238 Mich. 443).

Bill by the O-So-White Products Company against
the Richards Manufacturing Company for specific
performance of a land contract.    Defendant filed a
cross-bill to rescind the contract.    From a decree for
defendant, plaintiff appeals.    Reversed, and decree
entered for plaintiff.

*Corwin, Norcross & Cook,* for plaintiff.

*Grant Sims,* for defendant.

BIRD, J.    The plaintiff, through its president,
Charles Donovan, entered into an agreement with de-
fendant, through its president, G. A. Richards, whereby
defendant was to convey to plaintiff a certain ware-
house situate in Grand Rapids for the consideration
of 1,200 shares of the capital stock of plaintiff.    The

Licenses, 37 C. J. § 171; 15 A. L. R. 262; 24 A. L. R. 523;
27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014.

oral agreement was confirmed by an exchange of letters. The certificate for 1,200 shares of the plaintiff company was indorsed and tendered to defendant. The deed to the warehouse was prepared, but when they were ready to exchange the papers it was found that the deed was defective. This delayed the deal, and during the delay the defendant evidently changed its mind because it refused to complete the contract. The only excuse it gave was that the transaction was in violation of the blue sky law; (Act No. 220, Pub. Acts 1923). Upon defendant's refusal to consummate the deal plaintiff filed its bill for specific performance. Upon the hearing defendant rescinded the contract and decree passed for defendant.

It appears from the proofs that plaintiff was a comparatively new corporation, having been incorporated in 1924, with a capital stock of $30,000, 51 per cent. of which went to Charles Donovan, its president, for his formula and manufacturing apparatus to manufacture a washing compound. President Richards was attracted to the new corporation and offered to transfer its warehouse to plaintiff for a plant for 1,200 shares of the plaintiff company. This offer was accepted and a certificate for 1,200 shares belonging to Charles Donovan was indorsed to the Richards Manufacturing Company. Plaintiff repaired the building and moved the effects of the company into it. Plaintiff assumed a mortgage on the building of $5,000, and defendant agreed to repay the plaintiff that amount in installments, and had already paid one of them before it refused to complete the transaction. When plaintiff made this deal for a plant it increased its capital stock to $150,000, with the understanding with the stockholders that Charles Donovan should still retain the 51 per cent. of the stock.

We are not in accord with the chancellor's conclusion. The shares which were tendered to defendant were

1,200 shares of the 1924 corporation. They were the sole and exclusive property of Charles Donovan. These shares were exempt from the provisions of the act under subdivision (*d*) of section 5, which provides:

"The distribution by a corporation of capital stock, bonds or other securities to its stockholders or other security holders as stock dividend or other distribution out of earnings or surplus."

But counsel for defendant attempts to hitch the two issues of stock together and draw the inference therefrom that it was simply a subterfuge to sail around the provisions of the blue sky law. As evidence of this he points to a resolution of the new company to reimburse President Donovan in new stock for paying for the warehouse with his individual stock.

When the deal was consummated the new stock was not issued. If President Donovan gave his stock in payment of the building he had a right to be reimbursed in the new stock. The 1,200 shares offered in payment of the warehouse had belonged to him since 1924, and he had a right to sell them. The sale clearly came within subdivision (*c*) of section 5, of the act, which was as follows:

"In an isolated transaction in which any security is sold, offered for sale, or delivery, by the owner thereof, or by his representative for the owner's account, such sale or offer for sale or delivery not being made in the course of repeated and successive transactions of a like character by such owner, or on his account by such representative, and such owner or representative not being the underwriter of such security."

Personally, I think it was not any concern of defendant how, when, and in what manner President Donovan was reimbursed for parting with his shares. The shares which were turned over to defendant were beyond criticism under Act No. 220, and that was all that concerned defendant. But if the transactions be hitched together, I can see nothing irregular about it.

The capital stock of the new company was submitted to the securities commission. The commission was informed that President Donovan was to retain 51 per cent. of the new stock, the same as he had held of the old. Under this showing, the commission gave to it the right to solicit subscriptions, but provided that the sales, before being made, should be submitted to the commission. In keeping with this arrangement, it had made one sale of 300 shares and the sale had been approved by the commission. It cannot be assumed that plaintiff was going to violate the act in order to make out a case of fraud. With full knowledge that Donovan was to retain 51 per cent., the commission made the order that subscriptions might be solicited. The transaction was entered into in good faith by both parties. There is no fraud alleged nor none proven, and we can see no legal nor moral reason why the deal should not be finished and enforced as agreed.

The decree will be reversed and one entered in accordance with this opinion, with costs of both courts to the plaintiff.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.